# Dirk McQuestion, Plaintiff-Respondent,

v.

# Brian Crawford, Defendant-Appellant.

Court of Appeals

*No. 2008AP1096. Submitted on briefs November 11, 2008.*
*—Decided February 10, 2009.*

## 2009 WI App 35

(Also reported in 765 N.W.2d 822.)

494

On behalf of the defendant-appellant, the cause was submitted on the briefs of *April A.G. Hartman* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas G. Schmitzer* of *Hippenmeyer, Reilly, Moodie & Blum* of Waukesha.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Brian Crawford appeals from the judgment of eviction lifting the emergency assistance stay and requiring him to move from the premises owned by Dirk McQuestion.[1] Crawford submits that pursuant to WIS. STAT. § 799.40(4) (2007–08),[2] the trial court did not have the authority to lift an emergency assistance stay after he was found eligible for emergency assistance, *see* WIS. STAT. § 49.138,[3] because the statute requires the court to stay the eviction action "until the tenant receives the emergency assistance," no matter how long it takes the tenant to find suitable

---

[1] This case was originally scheduled to be a one-judge opinion. On the court's own motion, it was converted to a three-judge panel by order of the Chief Judge of the Court of Appeals dated October 21, 2008. *See* WIS. STAT. RULE 809.41(3) (2007–08).

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] WISCONSIN STAT. § 49.138(lm) was amended effective July 1, 2008, by 2007 Wis. Act 20, § 1408. The amendment related to the renumbering of WIS. STAT. § 20.445. *See* 2007 Wis. Act 20, §§ 453, 469. As material to this appeal, there are no substantive differences between the version in effect when Crawford was found eligible for emergency assistance and the current version.

housing. We conclude that implicit in the statute is the requirement that the stay under this provision is in effect for only a reasonable period of time. Thus, we affirm.

## I. BACKGROUND.

¶ 2. On February 21, 2008, McQuestion commenced an eviction action, pursuant to WIS. STAT. § 799.40, against Crawford in small claims court. In his complaint, McQuestion stated that he was the owner of a premises located at 1545 South 82nd Street in West Allis, Wisconsin, and that on October 17, 2007, he rented the premises to Crawford for $850 per month and they both signed a twelve-month lease, commencing on November 1, 2007. In his complaint, McQuestion alleged that Crawford, contrary to the lease agreement, moved into the premises on October 27, 2007. McQuestion also claimed that he gave Crawford a $500 credit for the first month's rent in exchange for Crawford painting the premises, and that as of February 19, 2008, the premises had not been painted. Further, McQuestion claimed that Crawford was late paying the rent for every month he was living there. His complaint recites that in November 2007, the rent was paid seven days late; in December 2007, seven days late; in January 2008, eight days late; and in February 2008, five days late. Further, McQuestion maintained that, contrary to the lease provisions requiring Crawford to pay $850 per month for rent, Crawford paid only $750 for the months of January and February. The complaint also indicated that McQuestion served a ten-day notice to quit or pay rent on Crawford, and that Crawford had failed to pay anything. McQuestion sought to have Crawford evicted and to recover the outstanding rent and late fees.

¶ 3.   On April 1, 2008, the trial court held a bench trial. McQuestion testified consistent with his complaint. He told the court that he and Crawford entered into a lease calling for $850 per month rent and that Crawford was given a $500 credit for painting. He advised that the lease permitted late fees in the event the rent was not paid on time. In addition, McQuestion told the trial court that he and Crawford had an oral agreement not contained in the lease that Crawford was responsible for cutting the grass and shoveling the snow. McQuestion sought the stated $200 outstanding on the rent and an additional $800, which included the $500 credit because no painting had been done and late fees as set out in the lease. Crawford also testified. He said that he did not realize he could be charged a fee for paying the rent late, and he decided to subtract $100 for rents owed in both January and February because he had to shovel the snow. Crawford also explained he had not yet painted because his wife was pregnant.

¶ 4.   The trial court found that McQuestion was entitled to evict Crawford because Crawford had not paid the $200 outstanding rent despite the notice, and that legally Crawford could not arbitrarily decide to deduct $100 per month for snow shoveling. Shortly thereafter, Crawford advised the court that he was seeking emergency assistance from the State and the trial court adjourned the matter, staying the proceedings pursuant to Wis. Stat. § 799.40(4).

¶ 5.   On the adjourned date, April 10, 2008, Crawford, now represented by counsel, appeared before a substitute judge. The substitute judge was told Crawford was eligible for emergency assistance and was advised that Crawford intended to raise two previously unheard legal issues. Due to the fact that the substitute judge had not presided over the trial, the matter was

rescheduled in front of the original trial court. When the substitute judge inquired when Crawford was intending to vacate the property, his attorney advised the court that: "He would like to stay until the end of his lease." The stay was continued.

¶ 6. On the adjourned date, April 15, 2008, the trial court heard argument from Crawford's attorney concerning both the legality of the notice to quit or pay rent served on Crawford and a dispute over the length of a WIS. STAT. § 799.40(4) stay of the eviction proceedings for a tenant eligible for emergency assistance. Ultimately, the trial court found the notice to quit or pay rent to be legal and the trial court continued the stay of the proceedings for an additional week. On April 22, 2008, the trial court heard that Crawford had not yet found suitable housing. Crawford explained why, although eligible since approximately April 9th, he had not secured housing:

> Because there's five of us and one on the way, and we're not, I guess, willing to live in just any place and be rushed out into just any place for my family. I want it to be somewhere safe as we were living over in – where we live at now; so I want to find somewhere adequate and, once again, safe.

Noting that the time allotted to Crawford was longer than in any other eviction case the trial court had presided over, the trial court lifted the stay as of April 30, 2008, observing that:

> This summons and complaint was filed in February – February 22nd. We're now approaching May. This is an extenuated course of hearings on this case. We've done more time. We've had more delays. We've had more, you know, opportunity for him to go forward and find somewhere than in any other case that I've seen here.

Two weeks later, the trial court signed a judgment of eviction and a writ of restitution. However, after receiving an "undertaking" pursuant to WIS. STAT. § 799.445 signed by Crawford, the trial court stayed the execution of the writ of restitution.[4] This appeal was filed shortly after the April 22, 2008 hearing.

## II. ANALYSIS.

¶ 7.    The dispute in this case centers on the statutory interpretation of WIS. STAT. § 799.40(4), which reads, in relevant part:

> **Eviction actions.**
>
> . . . .
>
> **(4)** STAY OF PROCEEDING. The court shall stay the proceedings in a civil action of eviction if the tenant applies for emergency assistance under s. 49.138. The tenant shall inform the court of the outcome of the determination of eligibility for emergency assistance. The stay remains in effect until the tenant's eligibility for emergency assistance is determined and, if the tenant is determined to be eligible, until the tenant receives the emergency assistance.

Whether § 799.40(4) permits the trial court to lift a stay before a tenant has actually received the emergency assistance is a question of law that we decide *de novo*. *See State v. Schmidt*, 2004 WI App 235, ¶ 13, 277 Wis. 2d 561, 691 N.W.2d 379 (Construction of a statute

---

[4] An appeal of an eviction is governed by WIS. STAT. § 799.445, which obligates a defendant, when the defendant wishes to stay the eviction proceedings while the appeal is pending, to serve an undertaking on the plaintiff, after obtaining the judge's approval.

and its application to the facts the trial court found presents a question of law we review without deference.).

■

¶ 8.   We begin with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. That language is given its common, ordinary, and accepted meaning. *Id.* We interpret language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a way that avoids absurd results. *Id.*, ¶ 46. We also consider the purpose of the statute so far as the purpose is shown in the text and structure of the statute. *Id.*, ¶ 48.

¶ 9.   WISCONSIN STAT. § 799.40(4) references the emergency assistance program found in WIS. STAT. § 49.138. Section 49.138(1m) directs that: "The department shall implement a program of emergency assistance to needy persons in cases of fire, flood, natural disaster, homelessness or impending homelessness, or energy crisis." The statute also advises that payment under the program can only be provided once in a twelve-month period and can "be used only to obtain or retain a permanent living accommodation." *Id.* In order to administer the program, various Department of Workforce Development rules have been promulgated in the Wisconsin Administrative Code. One of them, WIS. ADMIN. CODE § DWD 16.08(1) (Nov. 2006), sets out the procedure for receiving the funds for those found eligible for emergency assistance:

> **Eligibility determination and payment procedures. (1)** The agency shall determine eligibility for emergency assistance within 5 working days after receiving a completed application. If the group is found eligible, the agency shall issue a payment to the emer-

gency assistance group within the same 5 working days, except as provided in subs. (4) and (5). The payment may be made in the form of cash, a voucher, or a vendor payment.

*Id.*[5]

¶ 10. Pertinent to our facts, WIS. ADMIN. CODE § DWD 16.05(3) defines who is eligible for the funding:

> **(3)** ELIGIBILITY DUE TO IMPENDING HOMELESSNESS. An emergency assistance group shall be considered to be facing impending homelessness for purposes of determining nonfinancial eligibility under sub. (1) if the group is experiencing a financial crisis that makes it very difficult to make a rent payment, mortgage payment, or property tax payment and the group has been notified that it will be required to leave its current housing if it does not make that payment immediately.

Section DWD 16.08(5)(a) explains what triggers the payment:

> **(5)** Emergency assistance payments for impending homelessness under s. DWD 16.05(3) may be issued to obtain a new permanent living accommodation or retain a current permanent living accommodation.
>
> (a) If an emergency assistance group requests that the emergency assistance payment be made to obtain a new permanent living accommodation, the agency shall issue a payment, following the eligibility determination, within 5 working days of the date that the group notifies the agency that a permanent living accommodation has been obtained.

---

[5] All references to the Wisconsin Administrative Code are to the November 2006 version. Effective December 1, 2008, Wis. Admin. Code ch. DWD 16 was renumbered to Wis. Admin. Code ch. DCF 120, pursuant to Administrative Register No. 635.

¶ 11. Crawford reasons that: (1) because Wis. Stat. § 799.40(4) of the eviction statute obligates a trial court to stay the proceedings "until the tenant receives the emergency assistance"; (2) per Wis. Admin. Code § DWD 16.08(5)(a) a tenant cannot receive the funding until "the group notifies the agency that a permanent living accommodation has been obtained"; and (3) in order to secure a permanent living accommodation a landlord must agree to rent to the group, that the § 799.40(4) stay remains in place until suitable housing has been located and the new landlord agrees to rent to the group. Crawford submits that an evicted tenant has no obligation to obtain permanent housing within any particular timeline because the stay is mandated to remain in place while the search is ongoing. Crawford contends that allowing the stay to remain while the search for suitable permanent housing is underway will not harm the evicting landlord. This is so, Crawford writes, because "the landlord has the opportunity to recoup any unpaid rent by obtaining a money judgment after the family has moved." We disagree.

¶ 12. First, it is our duty to avoid statutory interpretations that lead to absurd results. *See, e.g., Kalal*, 271 Wis. 2d 633, ¶ 46. Here, Crawford's interpretation could lead to absurd results. A group could prolong their stay in the property by either not looking for replacement housing or rejecting all available properties. To suggest that those found eligible for emergency assistance can remain indefinitely in housing from which they have been evicted could lead to serious abuse. In addition, should we adopt Crawford's interpretation, it would create the unfortunate consequence, for those found eligible for emergency assistance, of providing no incentive to look for suitable permanent housing within a reasonable period of time. As the trial

503

court observed in refusing to accept this interpretation, "it could go on forever." Such an interpretation also runs counter to the legislative intent found in the eviction statutes that owners are entitled to possession of their property and can swiftly remove renters who have failed to pay the rent. *See* WIS. STAT. § 799.40(1) ("A civil action of eviction may be commenced by a person entitled to the possession of real property to remove therefrom any person who is not entitled to either the possession or occupancy of such real property."); *see also Scalzo v. Anderson*, 87 Wis. 2d 834, 847, 275 N.W.2d 894 (1979) (explaining that under the precursor to WIS. STAT. ch. 799, an eviction action was intended to be summary in nature and therefore may utilize a " 'speeded up' " forum) (citation omitted). Finally, we do not share Crawford's optimistic view that landlords will face little harm over delayed evictions because the landlords will recoup their rent monies later. In all likelihood, landlords will have great difficulty in collecting money judgments from those who are found eligible for emergency assistance because, by virtue of their eligibility for emergency assistance, they have been identified as being "needy," that is, without sufficient resources, and while the stay is in place, the landlord's own monetary obligations would not be on hold.

¶ 13.   As a result of these concerns, we conclude that implicit in the statute's mandate that a stay is required until the tenant receives the emergency assistance is a requirement that the tenant seek and find suitable permanent housing within a reasonable period of time. Other related statutes confirm this conclusion. *See Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 804, 440 N.W.2d 329 (1989) ("In construing a statute, the entire section and related sections are to

be considered."). We observe that most of the statutes dealing with eviction proceedings and notices have short timelines. *See, e.g.,* WIS. STAT. §§ 704.17(1), (2) (specifying that in a notice the tenant has five days to pay overdue rent); 799.445 (providing the expedited appeal procedure for evictions and permitting the filing of an appeal within fifteen days of entry of the judgment or order); WIS. ADMIN. CODE § DWD 16.08(1) (requiring that the agency both determine eligibility for emergency assistance and if the group is found eligible, make payments available within five days). Indeed, according to Crawford's lawyer, the Department of Workforce Development itself places a thirty-day time limit for the payment of emergency assistance funds to a group found eligible with the possibility of a thirty-day extension.[6] Such short timelines strongly suggest that the legislature intended evictions to be speedy and the department's emergency assistance to be accomplished quickly.

¶ 14.  In any event, in balancing the needs of the tenant against those of the landlord, we are satisfied that implicit in the WIS. STAT. § 799.40(4) stay is the requirement that the stay will remain in effect for only a reasonable period of time as determined by the judge under the circumstances in each individual case.

¶ 15.  For the reasons stated, the judgment lifting the stay of eviction proceedings is affirmed.

*By the Court.*—Judgment affirmed.

---

[6] Crawford's lawyer made this statement, without reference to the corresponding regulation, before the trial court.